UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEREK WAYNE LEWIS,<br><br>                  Petitioner,<br><br>vs.<br><br>WARDEN RAMIREZ,<br><br>                  Respondent. | Case No. 1:15-cv-00041-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

      Petitioner Derek Wayne Lewis is proceeding on his Amended Petition for Writ of Habeas Corpus challenging his state court conviction. (Dkt. 1.) Pending before the Court is Respondent Warden Ramirez's Motion for Summary Dismissal, seeking dismissal of the Amended Petition on procedural grounds (Dkt. 37), and Petitioner's Motion to Present Evidence. (Dkt. 42.) All named parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 18.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

      Having reviewed the record in this matter, including the state court record lodged by the parties, and having considered the arguments of the parties, the Court enters the following Order.

# REVIEW OF PETITION

1. **Standard of Law for Summary Dismissal Motions**

When a petitioner's compliance with threshold procedural requirements is at issue, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989). Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." The Court takes judicial notice of the records from Petitioner's state court proceedings lodged by the parties.

2. **Background**

When Petitioner was 17 years old, he shot and killed his father in Ada County, Idaho. Police investigators interrogated Petitioner alone for several hours. After a *Miranda* warning, Petitioner told investigators that he had shot his father by accident. Petitioner was arrested and charged with first degree murder.

Ada County public defenders August Cahill and Craig Stevely represented Petitioner in pretrial proceedings. Counsel filed a motion to suppress Petitioner's confession. Petitioner's counsel advised Petitioner to accept a plea agreement wherein the prosecutor would reduce the charge to second degree murder and dismiss the weapon enhancement. Petitioner accepted the plea on the advice of his counsel. Petitioner hoped to serve no more than five years in prison.

On April 10, 2009 (mailbox rule),[1] Petitioner was sentenced to a 20-year fixed term of incarceration, with life indeterminate. Pursuant to his plea agreement, Petitioner waived his direct appeal, but he filed a motion to correct an illegal sentence on July 1, 2009. He did not pursue that action to completion but withdrew it on February 4, 2010. (*See* State's Lodging A-2.)

On December 18, 2009 (mailbox rule), Petitioner filed his first post-conviction petition pro se. On May 27, 2010, the petition was summarily dismissed by the state district court. Petitioner did not file an appeal. (*See* State's Lodgings C-2, C-7, and F-5.)

On January 28, 2011 (mailbox rule), Petitioner filed a motion to withdraw his guilty plea. The motion was dismissed as untimely. Petitioner did not file an appeal. (*See* State's Lodgings A-2, D-1.)

On January 3, 2014 (mailbox rule), Petitioner file a pro se motion to correct an illegal sentence. Soon after, his appointed counsel filed a motion for sentence review for Petitioner and incorporated Petitioner's motion to correct an illegal sentence. After the motion was dismissed, Petitioner filed an appeal, which was heard by the Idaho Court of Appeals. The order of dismissal was affirmed on appeal, and Petitioner's petition for review before the Idaho Supreme Court was denied. (*See* State's Lodgings A-2, B-1 through B-7.)

---

[1] If a prisoner uses the internal prisoner legal mail system, a legal document is deemed filed on the date a prisoner delivers it to the prison authorities for mailing to the Clerk of Court, rather than the date it is actually filed with the clerk of court. *See Houston v. Lack*, 487 U.S. 266 (1988) (§ 2254 context). This is called the "mailbox rule."

**MEMORANDUM DECISION AND ORDER - 3**

On December 23, 2014, Petitioner filed a successive post-conviction petition. The Court dismissed the petition as untimely. Petitioner did not file an appeal. (*See* State's Lodgings A-2, D-1 through D-6.)

On February 5, 2015 (mailbox rule), Petitioner filed his original federal Petition for Writ of Habeas Corpus. The Court stayed this matter while Petitioner pursued state court remedies. (Dkt. 1, 25.)

On October 14, 2015, Petitioner filed a second successive post-conviction petition. That petition was dismissed by the state district court on procedural grounds. The Idaho Court of Appeals affirmed the decision, and Petitioner did not file a petition for review before the Idaho Supreme Court. (*See* State's Lodgings E-1, F-5, F-6.)

3. **Statute of Limitations Standard of Law**

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a petitioner to seek federal habeas corpus relief within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[2] 28 U.S.C. § 2244(d)(1)(A). One year means 366 days, for example, from January 1, 2000, to January 1, 2001. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Federal Rule of Civil Procedure 6(a) to AEDPA).

Under 28 U.S.C. § 2244(d)(1)(A), the date of "finality" that begins the one-year time period in cases originating in the Idaho state courts is as follows, depending on how far a petitioner pursues his claim:

---

[2] Several other triggering events for the statute of limitations exist—but are less common—and are set forth in subsections 2244(d)(1)(B)-(D).

| **Action Taken** | **Finality Occurs** |
|---|---|
| No appeal is filed after state district court order or judgment | 42 days later, *see* Idaho Appellate Rule 14 |
| Appeal is filed and Idaho Court of Appeals issues a decision, but no petition for review is filed with the Idaho Supreme Court | 21 days later, *see* Idaho Appellate Rule 118 |
| Appeal is filed and Idaho Supreme Court issues a decision or denies a petition for review of an Idaho Court of Appeals decision, and Petitioner does not file a petition for writ of certiorari with the United States Supreme Court | 90 days later, *see* United States Supreme Court Rule 13 |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, and the petition is denied | Date of denial |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, the petition is granted, and the United States Supreme Court issues a decision | Date of decision |

In each instance above, "finality" is measured from entry of the final judgment or order, not from a remittitur or mandate, which are mere formalities. *Gonzales v. Thaler*, 132 S.Ct. 641, 653 (2012); *Clay v. United States*, 537 U.S. 522, 529 (2003); *Wixom v. Washington*, 264 F.3d 894, 898 n.4 (9th Cir. 2001).

AEDPA also contains a statutory tolling provision that stops or suspends the one-year limitations period from running during the time in "which a *properly filed* application for State postconviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2) (emphasis added). The "time limits on postconviction petitions are 'condition[s] to filing,' such that an untimely petition [is] not deemed 'properly filed.'"

*Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005) (quoting *Artuz v. Bennett*, 533 U.S. 4, 8, 11 (2000).

For purposes of calculating the federal statute of limitations, this statutory tolling provision applies only to "pending" actions; therefore, the additional 21-, 42- and 90-day time periods associated with the calculation of finality after direct appeal are *not* applied to extend the tolling periods for post-conviction actions. However, unlike direct appeal "finality," the term "pending" *does* extend through the date of the remittitur for post-conviction actions.[3]

The federal statute is *not* tolled between the date the direct appeal is "final" and the filing of a proper post-conviction application, or between post-conviction finality and any successive collateral review petition. *Id*. Each time statutory tolling ends, the statute of limitations does not restart at one year, but begins running at the place where it stopped before the post-conviction action was filed.

Once the federal statute of limitations has expired, it cannot be reinstated or resurrected by a later-filed state court action. *See Ferguson v. Palmateer*, 321 F.3d 820, 822 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed").

4. **Discussion re: Timeliness**

Petitioner's judgment of conviction was entered on April 10, 2009. Because he did not file an appeal, his judgment became final 42 days later, on May 22, 2009. *See* Idaho

---

[3] *See Lawrence v. Florida*, 549 U.S. 327, 337 (2007). "Pending" is determined according to each particular state's law. In Idaho, an appellate case remains pending until a remittitur is issued. *See Cochran v. State*, 133 Idaho 205, 206, 984 P.2d 128, 129 (Idaho Ct. App. 1999).

Appellate Rule 14. His federal statute of limitations began running at that time, with 366 days in which to file the Petition. When Petitioner filed his motion for reduction of sentence on July 1, 2009, the federal statute of limitations was tolled, with 39 days having run before that date.

Petitioner filed his initial post-conviction action on December 18, 2009, while the motion for reduction of sentence was still pending. Thus, the federal statute remained tolled. The state district court dismissed the petition on May 27, 2010. Petitioner's federal statute began running on the next day, May 28, 2010, because no action was "pending" after May 27. A total of 327 days remained in which to file a federal habeas corpus petition, making the federal petition due on April 20, 2011 (366 – 39 = 327).

For the reasons that follow, the Court concludes that Petitioner's statute of limitations expired 327 days later, on April 20, 2011. In particular, while Petitioner *did* file a motion to withdraw his guilty plea on January 28, 2011, it was dismissed on untimeliness grounds. Therefore, it cannot be counted as tolling the federal statute of limitations because it was "improperly filed." Petitioner's next action, the motion to correct an illegal sentence filed on January 3, 2014 (mailbox rule), was filed several years after Petitioner's statute of limitations expired. When Petitioner filed his federal Habeas Corpus Petition on February 5, 2015 (mailbox rule), it was four years too late.

   5. **Standard of Law re: Equitable Tolling**

If a petition is deemed untimely, a federal court can hear the claims if the petitioner can establish that "equitable tolling" should be applied. In *Pace v. DiGuglielmo*, the Supreme Court clarified that, "[g]enerally, a litigant seeking equitable

**MEMORANDUM DECISION AND ORDER - 7**

tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." 544 U.S. 408, 418 (2005). In addition, there must be a causal link between the lateness and the extraordinary circumstances. *See Bryant v. Schriro*, 499 F.3d 1056, 1061 (9th Cir. 2007) (holding that a petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence). The petitioner bears the burden of bringing forward facts to establish a basis for equitable tolling. *United States v. Marolf*, 173 F.3d 1213, 1318, n. 3 (9th Cir. 1999).

   **6. Discussion re: Equitable Tolling**

Petitioner cites a variety of factors as excuses for having missed his one-year federal statute of limitations. The factors must amount to an extraordinary circumstance that stood in the way of his filing, and he must establish a causal link between the circumstance and the failure to file.

Petitioner asserts that because of "the stresses of [solitary] confinement coupled with [his] PTSD, [he] was not able [to] file a cognizable [habeas corpus] …." (Dkt. 39, p. 3.) He further states:

> [He] will present evidence that he 1) diplayed [sic] signs indicative of a dissociatice [sic] disorder, 2) that his mother had expressed concern over Lewis' mental state, 3) that a probation officer had recommended that he undergo a mental health assessment several days before this act took place. [T]he Petitioner was traumatized by what happened and then was put into solitary right away, and right after being sentenced, both of which amounts to [L]ewis having not been competent or understanding of . . . how to file a cognizable claim for habeas corpus for several years after having been sentenced.

(Dkt. 39, p. 4.)

Petitioner asserts that, between 2009 and 2014, when he filed a Rule 35 motion, his "PTSD prevented his filing." (Dkt. 39, p. 3.) After 2014, he explains, he continued to try to exhaust his state remedies. *Id*. While Petitioner writes, "[t]he majority of these filings were pro se and w[]ere filed while the Petitioner was in solitary with the aid of a paralegal," it is unclear whether Petitioner is referring to his multiple filings *before* or *after* 2014 (*see id.*), because elsewhere in the record Petitioner explains that he was in solitary confinement at the beginning of his incarceration. (*See* Dkt. 39, p. 4.)

Petitioner next asserts: "Secondly, when the Petitioner first requested a Habeas Corpus packet at what was then the privately owned prison of ICC, where Lewis was being housed [, he was] was neglected by the resources center. This caused the Petitioner even more stress." (Dkt. 39, p. 3 (verbatim).) Petitioner asserts: "Not only was the Petitioner being housed with gang members and trying to manage his PTSD, he was having trouble getting the materials needed to even try to file his request for relief." (*Id.* (spelling regularized).) Petitioner has not stated the time frame within which he sought a packet from the legal resource center, nor has he stated exactly what he did to attempt to get a packet from the prison paralegal.

In its review of the state court record, the Court was unable to find any mention of any of these problems as impediments to filing—or at all—during the statute of limitations period. (*See* State's Lodgings A-1, A-2, and C-1 through C-7.) Specifically, there is no mention that one or more of these problems loomed so large that it interfered with Petitioner's ability to represent himself, file court documents, or otherwise protect his interests. Counsel filed nothing indicating that Petitioner was unable to intelligently

**MEMORANDUM DECISION AND ORDER - 9**

aid in his defense. Counsel did not seek, nor did the Court order on its own, any mental health evaluations indicating that Petitioner's competency was in question. Neither has Petitioner produced any attorney-client privileged correspondence suggesting that he suffered from any of these problems during the federal statute of limitations period.

The record reflects that Petitioner filed actions in state court during the time period in which the federal statute of limitations was running. Much of his writings were attempts to demonstrate to the state court how much he had contemplated the wrongness of having killed his father and how his thinking had changed to make him a better person. (*See* State's Lodging A-2.) The content of what he filed during this time period does not mention the problems he now highlights. Rather, the content reflects that Petitioner continuously had the ability to file cogent and appropriate pro se legal documents and make thoughtful strategic decisions on what to file during the time period he now asserts he was so adversely affected by mental disorders, PTSD, traumatization from being incarcerated, a poor legal resource center, and gangs that he was unable to file a habeas corpus petition.

7. **Standard of Law re: Actual Innocence**

The United States Supreme Court has determined that there is an "actual innocence" exception to the AEDPA statute of limitations, and that the exception applies where a petitioner meets the rigorous actual innocence standard of *Schlup v. Delo*, 513 U.S. 298 (1995). *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). "'Actual innocence

means factual innocence, and not mere legal insufficiency.'" *Marrero v. Ives*, 682 F.3d 1190 (9th Cir. 2012) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

To make a showing of actual innocence under *Schlup*, a petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Perkins*, 133 S.Ct. at 1933 (quoting *Schlup*, 513 U.S. at 329). This exception is to be applied only in the "extraordinary" or "extremely rare" case. *House v. Bell*, 547 U.S. 518, 538 (2006); *Schlup*, 513 U.S. at 320-21.

### 8. Discussion of Actual Innocence Exception

The record does not reflect sufficient facts to support a claim of actual innocence. If Petitioner desires to assert actual innocence to excuse the untimeliness of his claims, he must do so in his response to this Order.

### 9. Conclusion

The Court will conditionally dismiss the Petition for Writ of Habeas Corpus but will permit Petitioner to submit additional evidence to support equitable tolling, as he has requested in his Motion to Present Evidence. For example, Petitioner will be permitted to submit any or all of the following: (1) affidavits from his attorneys that Petitioner appeared to be laboring under a mental disorder, PTSD, or other outside factor that caused him to be unable to appropriately aid in his defense or file pro se documents; (2) mental health records from Petitioner's pretrial detention through 2011, including prescription medication records; (3) prison records showing any of the factors Petitioner described that caused him to not be able to file his Petition in time, including case

management notes, concern forms, and grievance forms; (4) legal resource center records, such as requests for visits and forms showing his diligence in pursuing federal habeas corpus relief; (5) his own affidavit or declaration that sets forth specific dates and other information relating to his claims of mental illness and incompetence; and (6) any other documents that tend to support Petitioner's excuses for not filing his Petition for Writ of Habeas Corpus during the federal statute of limitations period.

If Petitioner simply was unaware of the federal statute of limitations, or how it worked, because of his lack of legal knowledge, the Court expects Petitioner to include that information in his affidavit or declaration. Petitioner shall not submit treatises or articles as evidence, such as those items attached to his Response to the Motion for Summary Dismissal, but must provide evidence particularly about his own situation.

10. **Discussion re: Noncognizable Claims**

Claims 3 and 4 are ineffective assistance of post-conviction counsel claims. The Court agrees with Respondent that these claims fail to state a federal claim upon which relief can be granted. There is no constitutional right to counsel during collateral proceedings, including post-conviction. *See Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir. 1996). Habeas corpus is for vindication of rights arising from the federal Constitution, statutes, or treaties only.

11. **Conclusion**

The entire petition will be conditionally dismissed for failure to meet the statute of limitations, but Petitioner's Motion to Present Evidence (Dkt. 42) will be granted to the extent that he will be permitted to file a response to this Order, where he makes argument

and brings forward evidence to address the statute of limitations issue only. The Court does not reach the question of whether Petitioner's claims are procedurally defaulted or whether there is a legal excuse for the procedural default. Therefore, Petitioner should not address procedural default in his response to this Order. In any event, Claims 3 and 4 will be dismissed for failure to state a federal claim upon which relief can be granted, and Petitioner need not further address them.

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion for Summary Dismissal (Dkt. 37) is CONDITIONALLY GRANTED.

2. Petitioner's Motion to Present Evidence and Respond (Dkt. 42) is GRANTED to the extent that he shall have **90 days** after entry of this Order in which to file a response to this Order, as outlined above.

DATED: September 10, 2018

_____
Honorable Candy W. Dale
United States Magistrate Judge